People v Jamieson (2025 NY Slip Op 50003(U))

[*1]

People v Jamieson

2025 NY Slip Op 50003(U)

Decided on January 6, 2025

Justice Court Of The Village Of Piermont, Rockland County

Ruby, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on January 6, 2025
Justice Court of the Village of Piermont, Rockland County

The People of the State of New York, Plaintiff,

against
Thomas J. Jamieson, Defendant.

Case No. XX-XXXXXXX

For the People: 
Rudolph Zodda, Esq.; Bleakley, Platt & Schmidt, LLP; Pearl River, NY
For the Defendant:
Thomas J. Jamieson, pro se

Marc R. Ruby, J.

BACKGROUND & PROCEDURAL HISTORY
On August 21, 2024, at 11:22 A.M., the Defendant was operating a motor vehicle on Valentine Avenue. Following a traffic stop, the Piermont Police Department issued him 3 Uniform Traffic Ticket ("UTT")s, for allegedly contravening NY VEH. & TRAF. LAW ("VTL"): 1) § 401 (1)(a) Operating an unregistered motor vehicle; 2) § 1225-c (2)(a) Operating a motor vehicle while using a mobile telephone; and, 3) § 1172 (a) Failing to stop at a stop sign.
On November 4, 2024, the Defendant timely returned all 3 UTTs to this Court, via mail. The Defendant had signed and dated all 3 UTTs, on October 30, 2024, in furtherance of guilty pleas to all charges. The Defendant also made statements, explaining his plea to each charge. On the VTL § 401 (1)(a) plea, the Defendant stated he was "using a family care and [was] unaware of the registration." On the VTL § 1225-c (2)(a) plea, the Defendant stated he "was lost and couldn't find [his] way [and] needed to see where [he] was." And on the VTL § 1172 (a) plea, the Defendant stated he "was lost and trying to find [his] way."
In the section of the UTTs, preceding the Defendant's signatures, each UTT states:
"A PLEA OF GUILTY TO THIS CHARGE IS EQUIVALENT TO A CONVICTION AFTER TRIAL. IF YOU ARE CONVICTED, NOT ONLY WILL YOU BE LIABLE TO A PENALTY, BUT IN ADDITION YOUR LICENSE TO DRIVE A MOTOR VEHICLE OR MOTORCYCLE, AND YOUR CERTIFICATE OF REGISTRATION, IF ANY, ARE SUBJECT TO SUSPENSION AND REVOCATION AS PRESCRIBED BY LAW."
Nevertheless, the Defendant signed, dated, and acknowledged he was waiving arraignments in open court, as well as the aid of an attorney, and made guilty pleas. As a result, the Defendant similarly requested all 3 charges be disposed of by the fixing of fines or penalties. Accordingly, on November 4, 2024, this Court adjudicated the guilty pleas, and fined the Defendant $97.00 for each of the infractions, and imposed related village surcharges.
Thereafter, on December 4, 2024, the Court received a pro se email from the Defendant, indicting he was moving to vacate his guilty plea(s), under NY CRIM. PROC. LAW ("CPL") § 440.10. In support of the motion, the Defendant contended the issuing police officer "inform[ed] [him] that pleading guilty (emphasis added) would result in a reduction of the charges or penalties associated with the ticket[s]." The Defendant further averred his guilty pleas were predicated upon his "belief that the charges or penalties would be reduced." The Defendant then maintained he "later learned that this reduction was not guaranteed or formalized, and [his] guilty plea has led to unintended consequences that [he] did not fully understand at the time."
The Defendant did not indicate what unintended consequences have arisen. But the Defendant asserted he "now wish[es] to vacate [his] guilty plea[s] and enter . . . plea[s] of not guilty so that [he] may properly defend [him]self against the charge[s]." In sum, the Defendant claims his pleas were not "voluntary and knowing", because the pleas were "based on an incorrect or incomplete understanding of the consequences, as influenced by the statements made by the ticketing officer" and the "interests of justice" should allow him "to vacate [his] guilty plea[s] and enter. . .not guilty plea[s] [to] ensure that [he has] a fair opportunity to contest the charge[s] and that justice is served." The motion was not accompanied by an affidavit. The Defendant did not request any supporting depositions. And there was no request for a hearing on the motion. In turn, the People are not offering opposition to the application.

LEGAL ANALYSIS
There is a presumption albeit rebuttable of regularity, attending judgments of conviction. People v. Guariglia, 303 NY 338, 342 (1951); People v. Whitfield, 186 AD3d 1414, 1416 (2d Dept 2020). However, CPL Article 440, provides an avenue for the convicted to petition the conviction court, seeking to set aside the corresponding judgment, on the basis of facts not disclosed due to duress, fraud, or excusable mistake, which would otherwise have prevented the judgment's entry. People v. Velte, 61 Misc 3d 331, 333 (Poughkeepsie City Ct 2018). To this end, CPL § 440.10 allows vacatur of a judgment of conviction, for certain specified reasons, including where the judgment was procured by duress, misrepresentation or fraud on the part of a person acting for the prosecution. People v. Stanton, 200 AD3d 1307, 1311 (3d Dept 2021).
Where CPL § 440.10 does not cover the precise situation for a defendant to seek such relief, a motion may be made, by relying upon the common law writ called a coram nobis petition. Velte, 61 Misc 3d at 333. In a modern context, coram nobis relief is warranted where a defendant has shown a deprivation of fundamental rights, not apparent in the record, where the Defendant bears no blame in not alerting the conviction court to the deprivation. People v. Stewart, 16 AD2d 962 (2d Dept 1962); People v. Beltran, 77 Misc 3d 1091, 1096 (Deerpark Just Ct 2022).
For its part, a post-conviction court can rarely know the basis of a defendant's decision to plead guilty, without resorting to speculation. People v. Grant, 45 NY2d 366, 379 (1978). Since [*2]the decision may be based on factors, both in, and outside the record, the resulting conviction simply reflects that the defendant had sufficient reason to waive her trial rights. Id. So, unless the defendant reveals her reason for pleading guilty, at the time the plea is made, a court will rarely, if ever, be able to determine the defendant's reason. Id. 
A conviction court has sole discretion over the vacatur of its corresponding judgment. People v. Bowman, 81 Misc 3d 1220(A), 6 (Webster Justice Court 2023). In all events, a coram nobis application should not be a substitute for a new trial. Beltran, 77 Misc 3d at 1096. Nor is a hearing invariably necessary when a defendant moves under CPL § 440.10. People v. Newell, 76 Misc 3d 1062, 1064 (New Scotland Just Ct 2022). So, a conviction court may deny the motion without a hearing, if the motion is based upon a defendant's self-serving claims that are contradicted by the record, or unsupported by other evidence. People v. Miles, 205 AD3d 1222, 1224 (3d Dept 2022). Factors relevant in assessing the propriety of a police officer's statements during a traffic stop, include whether the officer made threats, or used violence. People v. Baker, 293 AD2d 820 (3d Dept 2002).
A UTT is a simplified information, which may not only commence an action, but also serve as a basis for prosecuting the charged infraction(s) or misdemeanor(s) provided the defendant has not requested a supporting deposition. See CPL § 1.20 (5)(b) and CPL § 100.25 (2). Under VTL § 207 (1), the Commissioner of the Department of Motor Vehicles ("DMV") prescribes the form for UTT's. When a UTT is filed, and lawful procedures are followed, a defendant may choose to dispense with her personal appearance and arraignment. CPL § 170.10 (1)(a). A vehicle & traffic defendant, charged under a UTT, does not have a constitutional right to plea bargain, because a decision about whether to enter a reduced plea agreement, is a matter of prosecutorial discretion. People v. Christensen, 21 Misc 3d 608, 620 (Sup Ct, Dutchess County 2008). And in all events, traffic defendants are not entitled to all the solemn constitutional protections afforded their criminal counterparts. People v. Mavroudis, 82 Misc 3d 428, 435 (Sup Ct, Albany County 2023).
A court need not inform a defendant of collateral consequences flowing from a guilty plea, peculiar to the defendant's circumstances, or within the control of the DMV. People v. Olecski, 57 Misc 3d 698, 700 & 707 (Crim Ct, NY County 2017). To this end, since the loss of driving privileges is a collateral consequence, the loss is not a valid basis for disturbing a conviction. People v. Gallagher, 70 Misc 3d 1210(A), 5 (Rye City Ct 2020). And single conviction does not necessarily result in the denial of an application for re-licensure; rather the DMV can consider an entire driving history in this regard. Mavroudis, 82 Misc 3d at 431.
In addition, there is no statutory or constitutional requirement that a person charged with a traffic infraction be apprised of the right to counsel or to an assignment of counsel. Gallagher, supra. And when a defendant pleads guilty by mail, she has not only had notice of her right to counsel, but has also affirmatively waived her right to counsel. Gallagher, at 6. As such, when the defendant pleads guilty to a traffic infraction, the defendant convicts herself by confessing to an actus reus, so all a court can do is enter judgment, and determine punishment. Id.
In People v. Hadsell, 249 AD2d 682, 684 (3d Dept 1998), the Third Department affirmed the denial of a CPL § 440 motion, because despite a possibility that the defendant received a higher sentence, than recommended, the defendant had nevertheless pled guilty, without any coercion. In People v. Pinaud, 132 AD2d 580 (2d Dept 1987), the Second Department reversed a denied vacatur motion, because the plea was induced by the trial court's unfulfilled promise that State and Federal sentences would run currently.
In People v. Calero, 23 AD2d 698 (2d Dept 1965), the Second Department reversed the denial of coram nobis relief, because of allegations a detective perjured himself when he testified that the seizure of drugs was authorized by a search warrant. In People v. Niedermeier, 52 Misc 3d 135(a), 1 (App Term, 2d Dept, 9th & 10th Jud Dists 2016), the defendant filed a CPL § 440.10 motion, contending the police officer who issued him a ticket, said the DMV would not assess points on his license, if he pled guilty. There, the Appellate Term held the application lacked merit, because the defendant affixed his signature a UTT, which specifically indicated his license could be revoked, upon conviction.
In People v. Parsons, 91 Misc 649 (Gen Sessions, NY County 1915), the defendant appealed from a magistrate's judgment, convicting him of disorderly conduct. There, the defendant submitted an affidavit stating that, while jailed and in a compromised mental state, he was advised by the arresting officer that if he pled guilty, he would receive a suspended sentence. While straddling the distinction between the writs of habeas corpus and coram nobis, the Parsons Court affirmed the conviction, because the defendant: was well-educated; understood English; should not have had nay misunderstandings, after the plain terms of the charging complaint were read to him aloud; did not plead guilty until after the reading; and, did not alert the magistrate to any reasons why his plea was involuntary.
In People v. Rosa, 198 N.Y.S. 787 (App Term, 1st Dept, Ct Special Sessions 1923), the defendant was convicted of disorderly conduct, and sentenced to 60 days in the workhouse. After the conviction's entry, the presiding magistrate learned the complaining police officer had allegedly told the defendant he would get off with a fine, if he pled guilty. Since the defendant originally intended to plead not-guilty, the conviction was reversed. In People v. Jenkins, 21 Misc 2d 267 (Onondaga County Ct 1959), convictions were reversed, because the trial court improperly deprived the defendants of legal representation, in refusing to adjourn a middle-of-the-night arraignment, which resulted in summarily meted out sentences of imprisonment. Whereas in Velte, supra, the court considered ex post facto regulations, which subjected the defendant to a lifetime revocation of his driver license. In granting vacatur, the Velte Court held there was simply no way the defendant (or even an attorney representing him) could possibly have known about future consequences flowing from the conviction. 

DISCUSSION
As a threshold matter, the Court reads this application as the Defendant moving under CPL § 440.10 (1)(b),(h)[FN1]
. And to whatever extent the application cannot be shoehorned into either subdivision, or to whatever extent where the Court has overlooked another applicable subdivision, the Court similarly considers this an application for a common-law writ of coram nobis. Velte, at 333. As another threshold matter, and as will be reasoned in greater detail, the application is decided on the papers, without a hearing.
With these matters discharged, analysis commences by recognizing the presumption of regularity surrounding judgments of conviction, as set forth in Guariglia, 303 NY at 342, and Whitfield, 186 AD3d at 1416. And in so doing, it is readily apparent that the Defendant has not posited anything suggesting this Court should have, would have, or even could have prevented judgments of conviction from entering. This is because, under Grant, the only way the Court could glean the basis of the Defendant's guilty plea, was by looking at statements made within the UTT's.
Yet, inasmuch as the Defendant said nothing about the police officer in the UTT's, the Court had no reason to reject his pleas, and certainly no reason to speculate anything was amiss. On the contrary, the UTT's offered a clear admonishment to the Defendant, by expressly indicating guilty pleas would be equivalent to convictions after trial. Moreover, the Defendant acknowledged this not once; and not twice but 3 times (on each UTT). Moreover, unlike the languishing jailed defendant in Parsons, and unlike the defendant being rammed through a middle-of-the-night arraignment in Jenkins, the Defendant had plenty of time to reflect upon his decision. Although the Defendant was effectively detained during the traffic stop, he was promptly released. He was never in an interrogation room, he was never jailed, and he voluntarily waived arraignment in open court. As such, any statements allegedly made by the police officer could not possibly have had any immediate effect upon the Defendant's decision to plead guilty.
The Defendant was charged on August 21, yet he did not affix his signature (thereby acknowledging having read the warnings) until October 30. In all this time, the Defendant never called the Court to inquire whether his understanding was accurate. The Defendant never engaged counsel to aid in his defense. The defendant expressly confessed his guilt, with supporting reasoning. The Defendant never mentioned anything to the Court about the officer's alleged statements. And the Defendant most certainly did not plead not-guilty. Instead, the Defendant not only acknowledged having read and understood the warnings, he made admissions which overwhelmingly support his guilt, and are wholly at odds with the reasons stated in the instant application. Lest there be any doubt, under Gallagher, the Defendant confessed to the infractions, by admitting: he needed to use his phone to see where he was; he failed to stop at a stop sign because he was unfamiliar with the area; and, he was not familiar with the registration status of the vehicle he was operating.
For all intents and purposes, the Defendant wants the Court to invalidate CPL § 1.20 (5)(b); CPL § 100.25 (2); CPL § 170.10 (1)(a); and, VTL § 207 (1), after higher courts have declined the opportunity. In any event, the application is doomed under Niedermeier, simply because the Defendant affixed his signatures to the UTT's, and pled guilty. But once more, under Grant, the Defendant cannot prevail under Stanton, because this Court simply must credit the statements made in the UTT's. Otherwise, any time a defendant opts to plead by mail, the Court would have to impermissibly engage in speciation, reject the defendant's statements and pleas, reject all notions of regularity and stability surrounding convictions, and effectively invalidate the long-standing and well-settled plea-by-mail procedure.
This also leads to the conclusion, that under Beltran and Stewart, a writ of coram nobis must be denied, because the Defendant bears sole responsibility for not bringing his post-conviction arguments, before he was convicted. As indicated, Niedermeier rejects the premise that a police officer's casual statements at a traffic stop support vacatur, after a Defendant signs a UTT, and pleads guilty without mentioning those statements. This is because, under Baker, a [*3]police officer's statements become problematic when the officer is threatening, violent, or coercive. Here, assuming the Defendant's version is accurate, the police officer did nothing of the sort. Once the officer halted an extremely dangerous situation that was unfolding on Valentine Avenue, his duty was discharged. He has not incentive, whatsoever, to coerce a guilty plea from a motorist.
Moreover, Beltran is invoked once again, because the Defendant asks the court for a do-over. Yet, even if the Defendant got another chance, there is no guarantee he would have realized a better outcome. Under Olecski, the Defendant does not enjoy a right to plea bargain. The prosecutor may not have offered the Defendant a deal. And even if the Defendant was offered a deal, there is no assurance the Court would have countenanced it. Yet, nevertheless, the Defendant claims his convictions have resulted in (phantom) unnamed unintended consequences. However, even though the Defendant's application id not sworn to, in an affidavit, this Court still considers the Defendant's statements. But further still, even assuming adverse consequences have found the Defendant, collateral consequences are not valid bases for vacatur, under Gallager. It also bears mentioning that this Court stopped well short of meting out the maximum fines attached to the Defendant's convictions. Accordingly, the Defendant already received the relief he prayed for, because the application seeks a "reduction of the charge(s) or (emphasis added) penalties." 
In closing, traffic infraction defendants just aren't afforded the same solemn constitutional protections, as their criminal counterparts. See Mavroudis, 82 Misc 3d at 435. As such, pursuant to Newell, the Court rules on the application, sans hearing. This is not because there was no request for a hearing, but rather, because under Miles, this Court has sole discretion over the application (See Bowman), and it is apparent the application is based upon self-serving statements, made well after the fact.

 ORDER
Accordingly, for all the foregoing reasons, the Defendant's application is DENIED. There are no meritorious circumstances before the Court which could lead to vacatur. To hold otherwise would destabilize each and every one of the countless guilty pleas this Court receives by mail. This would establish a horribly unworkable precedent, and would also be de facto invalidation of long-standing, well-established, and necessary plea procedures.
IT IS SO ORDERED.
Dated: 6 January 2025
Piermont, NY
By: Marc R. Ruby
Village Justice

Footnotes

Footnote 1:At any time after the entry of a judgment, the court in which it was entered may, upon motion of the defendant, vacate such judgment upon the ground that: (b) The judgment was procured by duress, misrepresentation or fraud on the part of the court or a prosecutor or a person acting for or in behalf of a court or a prosecutor; or, (h) The judgment was obtained in violation of a right of the defendant under the constitution of this state or of the United States. See CPL § 440.10 (1)(b), (h).